**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

VISION FILMS, INC.,                    )
                                       )
            Plaintiff,                 )
      v.                               )      Civil Action No. 12-1746-LPS-SRF
                                       )
JOHN DOES 1-24,                        )
                                       )
            Defendants.                )

**MEMORANDUM ORDER**

## I.    INTRODUCTION

Presently before the court in this copyright infringement action is plaintiff Vision Films, Inc.'s ("Vision Films") ex parte Motion for Leave to Conduct Expedited Discovery (the "Motion") (D.I. 5). Vision Films seeks to serve[1] third-party subpoenas on internet service providers ("ISPs") in order obtain the names and addresses of defendants John Does 1-24, which are associated with identified Internet Protocol ("IP") addresses that allegedly were used to illegally copy and distribute Vision Films' copyrighted motion picture. (D.I. 6 at 1, 9)

For the reasons which follow, the court **GRANTS** Vision Films' Motion to conduct expedited discovery with respect to the IP addresses identified in Exhibit A to the Complaint (D.I. 1), subject to the protective order outlined in Section V below.

## II.   BACKGROUND

Vision Films is a filmmaker and motion picture copyright-holder that is responsible for the production of the commercially released motion picture titled *Blood Money* (the "Motion

---

[1] Vision Films' Motion seeks "leave to conduct expedited discovery" (D.I. 5), but does not specifically propose the form of such discovery. Based upon the court's analysis of decisions related to the subject matter of the pending request, the court assumes that Vision Films anticipates issuing third party subpoenas directed to ISPs requesting information identifying the twenty four John Doe defendants.

1

Picture"). (D.I. 1 at 4) Vision Films asserts the following facts in its Complaint and Opening Brief in Support of the Motion (D.I. 6). The court accepts the averments as true for purposes of this motion, without making any findings of fact.

When a motion picture is transformed into an unsecured digital format, it can be copied and distributed an unlimited number of times over the internet. (D.I. 6 at 3; D.I. 7 ¶ 4) To do this, many individuals use online media distribution systems called "peer-to-peer" ("P2P") networks. (*Id.*; D.I. 7 ¶ 5) These P2P systems allow each user who copies a digital file from another user to distribute the file to other users. (*Id.*; D.I. 7 ¶ 6) Vision Films alleges that infringement occurs when an initial file-provider elects to share a file using a P2P network. (*Id.* at 3-4; D.I. 7 ¶ 7) This action of sharing is known as "seeding." (*Id.*; D.I. 7 ¶ 7) Other users ("peers") on the network connect to the seed file to download. (*Id.* at 4; D.I. 7 ¶ 7)

Vision Films engaged Crystal Bay Cooperation ("Crystal Bay") to identify direct infringers of its copyrighted Motion Picture. (D.I. 6 at 3) Using specially designed computer software, Crystal Bay determined that a number of individuals were copying and sharing the Motion Picture using an online media distribution system called BitTorrent. (*Id.* at 4; D.I. 7 ¶ 8)

BitTorrent is computer program that allows peers to join together in a P2P network to upload (distribute) and/or download (copy) files stored on other users' computers. (*Id.* at 3-4; D.I. 7 ¶ 6) BitTorrent employs a protocol to initiate simultaneous connections to hundreds of other users possessing and sharing copies of a file. (*Id.* at 4; D.I. 7 ¶ 10) As additional users request the same file, each new peer becomes part of the network from where the file can be downloaded. (*Id.*; D.I. 7 ¶ 8) Users download the file in pieces. (*Id.*; D.I. 7 ¶ 11) After each piece of the file is downloaded successfully, it is immediately available to others seeking the file. (*Id.*; D.I. 7 ¶ 11) This group of interacting peers is referred to as a "swarm." (*Id.*; D.I. 7 ¶ 14)

2

Individuals who participate in a swarm expose the IP address they are using when downloading or sharing a file. (*Id.* at 5-6; D.I. 7 ¶ 12, 21) Each of the individual Doe defendants in this action, identified by their IP addresses in Exhibit A to the Complaint, are allegedly peers who participated in the same swarm to reproduce and distribute the Motion Picture. (*Id.* at 4-5; D.I. 7 ¶ 15) Crystal Bay used publicly available databases to trace the identified IP addresses to general geographic areas purportedly within Delaware.[2] (*Id.* at 6; D.I. 7 ¶ 19, 23; D.I. 1, Ex. A)

Shortly after initiating this action against John Does 1-24, identifying them by their IP addresses, Vision Films filed the pending ex parte Motion for expedited discovery seeking access to the names and addresses of the individuals associated with the IP addresses, as found in the ISPs' billing records. (D.I. 6 at 7) Vision Films asserts that ISPs routinely delete the data associated with IP addresses, and therefore, the defendants' identifying information could be lost forever if the Motion is not granted. (*Id.* at 10)

### III.   LEGAL STANDARD

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."[3] Fed. R. Civ. P. 26(d)(1). Courts, however, have broad discretion to manage the discovery process, and can expedite or otherwise alter the timing and sequence of discovery. *See id.* "Federal courts are also specifically authorized, if circumstances

---

[2] "In situations where a plaintiff files suit against then unnamed defendants . . . courts have accepted IP addresses as establishing a prima facie case of personal jurisdiction." *Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383, at *10 (E.D. Pa. July 30, 2012) (citations omitted). Vision Films' factual assertion as to the location of the defendants at the time of the alleged infringement establishes personal jurisdiction for purposes of the pending Motion. Should the ISPs or any John Doe defendants make a showing contrary to this assertion, the court will reexamine the issue of personal jurisdiction.

[3] Rule 26(f) of the Federal Rules of Civil Procedure provides that "the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26(f)(1). Parties need not await the scheduling of a Rule 16 conference before holding a Rule 26(f) conference.

warrant, to shorten the time for responses to interrogatories and requests for production of documents, and to permit early depositions." *Kone Corp. v. Thyssenkrupp USA, Inc.*, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011) (citing Fed. R. Civ. P. 30(a)(2)(A)(iii); 33(b)(2); & 34(b)(2)(A)).

Unlike other discovery provisions, the Federal Rules of Civil Procedure do not set forth a standard under which courts should consider expedited discovery motions. Similarly, "[t]he Third Circuit does not appear to have adopted a standard for evaluating such requests." *Kone Corp.*, 2011 WL 4478477, at *3. Nevertheless, there are two prevalent standards district courts in this Circuit have applied in deciding motions for expedited discovery.

The first standard, articulated initially by the U.S. District Court for the Southern District of New York in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), "analyzes the expedited discovery request using factors similar to those used for injunctive relief or specific performance."[4] *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587 (D. Del. 2004) (citing *Notaro*, 95 F.R.D. at 405). *See also Kone Corp.*, 2011 WL 4478477, at *3.

The second, less demanding standard requires the party seeking discovery to show good cause for its motion, such that the request is "reasonable in light of all the circumstances." *BAE Sys. Aircraft Controls*, 224 F.R.D. at 587. *See also Kone Corp.*, 2011 WL 4478477, at *3 (citing *Better Packages, Inc. v. Zheng*, 2006 WL 1373055, at *3 (D.N.J. May 17, 2006)).

> Under this "reasonableness" standard, the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery

---

[4] Under the *Notaro* standard, the moving party must demonstrate:
> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Notaro*, 95 F.R.D. at 405.

requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests[] . . . ; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent.

*Kone Corp.*, 2011 WL 4478477, at \*4.

In prior decisions involving motions for expedited discovery, this court has utilized only the reasonableness standard. In *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 406351 (D. Del. Mar. 3, 2004), the court granted the plaintiff's motion for expedited discovery because the plaintiff "show[ed] good cause exist[ed] to allow the discovery," and the discovery sought was "appropriately tailored to the issues raised" in the pending motion. *Id.* at \*3 (citing *Philadelphia Newspapers v. Gannett Satellite Info. Network, Inc.*, 1998 WL 404820, at \*2 (E.D. Pa. July 15, 1998)). More recently, in *Kone Corp.*, this court discussed the competing standards applicable to motions for expedited discovery, and recognized that "'[a]n increasing majority of district courts' have rejected the rigid *Notaro* standard and adopted the more flexible 'good cause'/reasonableness analysis when considering expedited discovery requests." *Kone Corp.*, 2011 WL 4478477, at \*4 (quoting *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236 (S.D. Tex. 2011)). The court was "convinced that it should follow the lead of [*Dell Computer Corp.*] and the majority of other jurisdictions," and therefore, the court applied the reasonableness standard to the plaintiff's motion for expedited discovery. *Kone Corp.*, 2011 WL 4478477, at \*4.

The court follows the analysis in *Kone Corp.* and applies the reasonableness standard to Vision Films' Motion.

## IV. DISCUSSION

The reasonableness standard requires the court to consider "'the actual circumstances of this case, as well as . . . certain factors such as . . . the need for discovery, and the breadth of the moving party's discovery requests.'" *Kone Corp.*, 2011 WL 4478477, at \*6 (quoting *BAE Sys.*

*Aircraft Controls*, 224 F.R.D. at 587). The present circumstances favor expedited discovery and satisfy the reasonableness standard. Good cause exists for Vision Films to conduct expedited discovery. In granting Vision Films' Motion, the court finds instructive the reasoning set forth in *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012), a case involving facts substantially similar to the present matter.

In *Digital Sin*, the plaintiff filed a motion for expedited discovery seeking to subpoena various ISPs in order to identify the individuals associated with IP addresses that allegedly were used to illegally share the plaintiff's copyrighted motion picture. The court found that, under the circumstances, good cause existed for the plaintiff to engage in expedited discovery.

> Here, Plaintiff has alleged a prima facie case of infringement sufficient for purposes of this motion and appears to have no other way of obtaining the identities of the alleged infringers. . . . [I]n all of the opinions and rulings in similar cases around the country,[5] the Court has found no indication that the plaintiffs have any reasonable alternative . . . [other than] subpoenas to obtain the identities of the alleged infringers. Thus, without granting Plaintiff's request, the defendants cannot be identified or served and the litigation cannot proceed. Additionally, expedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.

*Digital Sin*, 279 F.R.D. at 241-42.

In the present case, Vision Films asserts a prima facie claim of copyright infringement for purposes of the pending Motion.[6] Vision Films, like the *Digital Sin* plaintiff, has no other way to

---

[5] *See Digital Sin*, 279 F.R.D. at 240 n.2.

[6] "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)). Here, Vision Films satisfies both elements. First, Vision Films attached to the Complaint a Certificate of Registration evidencing that a valid copyright exists for the Motion Picture. (D.I. 1, Ex. B) In addition, Vision Films asserts that the defendants, through the use of BitTorrent, illegally downloaded and shared the Motion Picture. (D.I. 6 at 1, 9) Therefore, the court finds that Vision Films has adequately set forth a prima facie claim of copyright infringement. *See Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383, at *7.

identify the alleged infringers, apart from serving subpoenas on the ISPs. Accordingly, without granting the pending Motion, Vision Films can neither identify nor serve the defendants, and this action cannot proceed. Additionally, Vision Films asserts, similar to the plaintiff in *Digital Sin*, that expedited discovery is necessary because evidence identifying the defendants may be destroyed as a result of routine deletion by ISPs. (D.I. 6 at 10) Therefore, the present circumstances favor expedited discovery.

The court, however, finds that the scope of Vision Films' proposed order for expedited discovery does not adequately address the potential for false identification of an alleged infringer. For example, Vision Films seeks the Doe defendants' "true identities," including their "true names and capacities," "subscriber information," "contact information" and "addresses." (D.I. 6 at 7, 9, 10) Therefore, the court will issue a protective order to preserve confidentiality and allow the Doe defendants and ISPs to be heard in this matter before the identifying information is disclosed to Vision Films.[7]

There is nothing in the record to suggest that Vision Films has ulterior motives in seeking the Doe defendants' identities. However, the court notes that a number of district courts have expressed concerns about misidentification of defendants and misuse of information in similar expedited discovery matters. With respect to misidentification, there is a possibility that the names and addresses produced will not match the individuals who actually downloaded the Motion Picture. This can occur where the true infringer uses someone else's computer or wireless network to access the copyrighted material. *See, e.g., Malibu Media, LLC v. Does 1-5,*

---

[7] "District courts may for good cause issue a protective order to spare parties 'annoyance, embarrassment, oppression, or undue burden.'" *Digital Sin*, 279 F.R.D. at 242 (quoting Fed. R. Civ. P. 26(c)(1)).

2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012) ("The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address [is] the infringer." (citation omitted)); *Digital Sin*, 279 F.R.D. at 242 (discussing the risk of false positives).

With respect to misuse of information, some courts have noted that plaintiffs appear simply to be "using the federal courts as an avenue to collect money." *Malibu Media, LLC v. Does 1 through 13*, 2012 WL 4956167, at *2 n.2 (E.D. Cal. Oct. 12, 2012). *See, e.g., AF Holdings LLC v. Doe*, 2012 WL 6608993, at *1 (E.D. Cal. Dec. 17, 2012); *Malibu Media, LLC v. Does 1-5*, 2012 WL 2001968, at *2; *Hard Drive Prods. v. Does 1-90*, 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012) (explaining that "the court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers"); *Digital Sin*, 279 F.R.D. at 242 (discussing coerced, unjust settlements). The court finds it prudent to incorporate some protections, for a limited duration, to avoid unintended consequences of the disclosure of confidential information as to the John Doe defendants. Consequently, the court has outlined the scope of the permissible expedited discovery in Section V.

V.    **CONCLUSION**

The Order is adapted from one issued by United States District Judge Nathan in *Digital Sin*.

IT IS HEREBY ORDERED that Vision Films may immediately serve a Rule 45 subpoena on the ISPs listed in Exhibit A to the Complaint to obtain information to identify Does 1-24, specifically, his or her name and address. The subpoena shall have a copy of this Order attached.

8

IT IS FURTHER ORDERED that the ISPs will have **60 days** from the date of service of the Rule 45 subpoena upon them to serve Does 1-24 with a copy of the subpoena and a copy of this Order. The ISPs may serve Does 1-24 using any reasonable means, including written notice sent to his or her last known address, transmitted either by first-class mail or via overnight service.

IT IS FURTHER ORDERED that Does 1-24 shall have **60 days** from the date of service of the Rule 45 subpoena and this Order upon him or her to file any motions with this court contesting the subpoena (including a motion to quash or modify the subpoena). The ISPs may not turn over the Doe defendants' identifying information to Vision Films before the expiration of this 60-day period. Additionally, if a defendant or ISP files a motion to quash the subpoena, the ISPs may not turn over any information to Vision Films until the issues have been addressed and the court issues an order instructing the ISPs to resume production of the requested discovery.

IT IS FURTHER ORDERED that if the 60-day period lapses without a Doe defendant or ISP contesting the subpoena, the ISPs shall have **10 days** to produce the information responsive to the subpoena to Vision Films. A Doe defendant or ISP who moves to quash or modify the subpoena, shall at the same time as his or her filing also notify all ISPs so that the ISPs are on notice not to release any of the Doe defendants' contact information to Vision Films until the court rules on any such motions.

IT IS FURTHER ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

IT IS FURTHER ORDERED that an ISP that receives a subpoena pursuant to this Order shall confer with Vision Films and shall not assess any charge in advance of providing the

information requested in the subpoena. An ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and cost report to Vision Films.

IT IS FURTHER ORDERED that Vision Films shall serve a copy of this Order along with any subpoenas issued pursuant to this Order to the listed ISPs.

IT IS FURTHER ORDERED that any information ultimately disclosed to Vision Films in response to a Rule 45 subpoena may be used by Vision Films solely for the purpose of protecting its rights as set forth in the Complaint.

Dated: March 20, 2013

Sherry R. Fallon
United States Magistrate Judge